In re A. O. BROWN & CO.

(Circuit Court of Appeals, Second Circuit.   January 8, 1912.)

No. 162.

BANKRUPTCY (§ 188*)—LIENS ON ESTATE—EVIDENCE.
   Evidence *held* insufficient to show that the proceeds of certain securities, loaned by claimants to the bankrupts and received by them the day before bankruptcy, were not paid out by the certification of a check, and that such proceeds came into the hands of the bankrupts' receiver so as to entitle claimants to a lien on the general assets of the bankrupts in the receiver's hands.
   [Ed. Note.—For other cases, see Bankruptcy, Cent. Dig. §§ 270, 286–295; Dec. Dig. § 188.*]

Appeal from the District Court of the United States for the Southern District of New York.

In the matter of bankruptcy of A. O. Brown & Company.  On petition to revise an order directing Charles E. Littlefield as trustee in bankruptcy, etc., to pay $9,600 to a firm doing business under the name of Schuyler & Company out of funds and credits of the bankrupts which came into the hands of their receiver.  Reversed and remanded, with instructions.

See, also, 189 Fed. 432.

Hays, Hershfield & Wolf (Ralph Wolf, of counsel), for appellant.
W. Benton Crisp (Theodore M. Crisp, of counsel), for appellee.

Before LACOMBE, COXE, and WARD, Circuit Judges.

LACOMBE, Circuit Judge.   The transactions upon which it is sought to establish a lien in favor of Schuyler & Co. are many of them set forth in our opinion in Re Brown & Co., petition of Princeton Bank (filed herewith) 193 Fed. 24.   Reference may be had to that opinion, as we shall not restate them all here.

On August 24, 1905, Brown & Co. asked Schuyler & Co. to loan them 300 shares of Interborough Railway stock, apparently to enable them to make deliveries, and agreed to secure the latter by paying the market price $9,600 for the same.   They gave a check for the $9,600 on the Hanover Bank which was presented on the 24th and again on the 25th, payment and certification refused.   Brown & Co. made an assignment for the benefit of creditors about noon on the 25th.   The stock was turned over to them on the 24th.   It is unnecessary to discuss the circumstances which show that their stock was converted by Brown & Co., since it is conceded by every one that it was so converted, was sold by them, and that its proceeds became trust money, in their hands, belonging to Schuyler & Co.   The only thing to be considered is the attempt which has been made to trace these funds.   Brown & Co. sold and delivered to Miller & Co., another firm of stockbrokers, 1,000 shares of Northern Pacific, 1,000 shares Great Northern, and these same 300 shares of Interborough. The total price was $289,600 and on the 24th Miller & Co. delivered

---
* For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

two checks therefor to Brown & Co. for $266,600 and $23,000 respectively. The first of these checks was received by bankrupts before 3 p. m. in time to deposit the same with the Hanover Bank on that day; the other was not received until 3:30 or 4 p. m. of that day. It was listed on a deposit slip dated August 24th, but apparently came too late for deposit until the next day. The first question presented is whether claimant's trust fund ($9,600) was in the larger or in the smaller of these two checks. The special master found that it was included in the $23,000 check, "as a reasonable inference from the testimony." According to his statement of the testimony, the 300 shares of Interborough were delivered by claimant to the bankrupts "well on in the afternoon of Monday, the 24th." If this were so, the inference would be a reasonable one; but the evidence of the bookkeeper shows that delivery of the loaned stock was made between 1:30 and 2 p. m., which was in ample time to make delivery to Miller & Co., and there is no other testimony as to the hour. We are by no means satisfied that the $9,600 was included in the smaller check. But it is not necessary to decide this question. The record is very scrappy and possibly some of the original exhibits, which are not before us, may contain enough to support the master's finding. It makes no difference in the final analysis in which of these two checks the claimant's $9,600 was included.

The history of the check for $23,000 may be first considered. It was, as we have seen, received between 3:30 and 4 p. m. August 24th, was entered on a deposit slip of that date, but could not be deposited in time; it went in some time the next day. According to the excerpt from the bank books, showing checking account, which will be found set out in our opinion (filed to-day) in the Princeton Bank claim, it was the first deposit made on the 25th. The testimony shows, however, that entries of deposits and charges did not always get into the books in the order of the actual transaction. It is the theory of the claimant that this $23,000 was not deposited until after the large check to A. H. Combs & Co. ($146,600) had been certified; it being contended that for that reason the proceeds of claimant's stock, which it is claimed were included in the $23,000 check, were not dissipated by the certification. To maintain this theory it is necessary for the claimant to show by competent proof which event occurred first, the certification or the deposit.

As to the certification there is the evidence of the man, H. B. Combs, who obtained the certification and deposited the certified check in the Bank of Commerce. He gives a narrative of the occurrences which preceded the certification and which naturally took some time, and states quite positively that he made the deposit in the Bank of Commerce probably at 20 minutes of 12 on his way to lunch. The testimony of the vice president of the Hanover Bank is as follows: He first said it was certified very early in the morning; that it was presented by Combs on August 24th and was held over till the next day until the account was made good. Being shown the lists of deposits as given in books of the bank and asked after which deposit it was that he authorized the certification, he replied: "After the deposit of

the $66,600." "Immediately after the deposit." He said there was
no record which would show when the $66,600 was deposited; that
according to his recollection it was the first deposit, might have been
10 a. m. or earlier. Later on he said he could not be positive as to
the time within an hour, and, being asked as to whether a check for
$17,300 figured among those which made the account good for $146,-
600, he said, if it came in after 11 a. m., it would not have been in-
cluded in his figuring; if it came in before that date, he would not
swear it did not so figure. This would bring the time of certification
down to about 11 a. m., which accords with Comb's testimony. The
vice president's recollection of the dates of these transactions he ad-
mitted was "somewhat uncertain." Elsewhere he testified that about
10 a. m. of August 25th he made a loan of $250,000 to the bankrupts
on 1,000 United States Common and 3,000 shares Amalgamated
Copper, which was paid off by bankrupt's check on Hanover Bank
later in the day. But the books disclose no such check, and the loan
slip shows that this note of $250,000 was in fact paid August 27th
through sale of the collateral. There is certainly no very satisfactory
proof as to when the check for $146,600 was actually certified, al-
though it is clearly established that it was not till the Combs check
for $66,600 and others had been deposited and the account made good.
Claimant calls attention to the general lien of the bank on all bal-
ances and all surpluses of collateral, arguing that there was no neces-
sity to wait for further deposits after opening of business on the 25th,
since the bank's officers could safely and lawfully certify to the amount
of $146,600. But the material circumstances is not what they *could*
have done, but what they *did do;* and, if anything is proved in this
case, it is the fact that the large check was not certified until the de-
posit of $66,600 was made, and also such other deposits as came in
before it.

In order to establish the relative priorities of the certification and
of the deposit of the $23,000 check, it is necessary to show the time
when both transactions took place. But as to the deposit there is no
testimony whatever. In view of the circumstance that the deposit
slip was prepared in the afternoon of the 24th, and that the condition
of Brown & Co. was such as to call for the prompt deposit of every-
thing they could control, it might fairly be inferred that the $23,000
would be deposited on the 25th, as soon as the bank opened; but it
is not necessary to draw inferences. It is for the claimant to show
when the $23,000 was deposited if that time is essential to his argu-
ment. He cannot trace his money by a mere succession of presump-
tion. Some of the modern cases have gone very far—possibly in some
instances too far—in helping out a claimant by presumptions not
always reasonable; but in this circuit we have always required some
substantive proof as a basis for holding that the owner of trust funds
converted by a bankrupt has a lien on some particular part of the
bankrupt's property. Carse, the vice president, testified that the $66,-
600 check was the first deposit on the 25th, *to his recollection*—a very
uncertain recollection, as we have seen—but no one testified and no
writing of any sort was introduced to show when the $23,000 was

deposited. We cannot therefore find that it was deposited after the certification, and, since the evidence establishes quite conclusively that the $146,600 check was not certified until 11 a. m. or later, there is nothing to show that the $23,000 check and all the others (except perhaps the $17,300) were not absorbed by the certification. If the claimant's $9,600 was included in the $23,000 check, it was then dissipated and can be traced no farther.

The claimant further contends that, if the proceeds of his stock were included in the check of Miller & Co. for $266,600 which Brown & Co. deposited on the 24th, it was used to pay a note of Brown & Co. to the Hanover Bank and to release the collateral which secured such note, and that therefore he acquired a lien on such collateral. Here again the testimony is insufficient. The vice president testified that on August 25th the bank loaned Brown & Co. $50,000 on collateral and $80,000 on collateral. Being asked if that finished with August 24th, he said:

"They borrowed on that day $85,000 against collateral which was paid off the same day and $200,000 on the 24th, which was paid back the same day."

It appears elsewhere in the record that this $200,000 was without collateral. Manifestly the vice president was testifying only to loans made on the 24th. There is nothing to show whether or not among the enormous transactions of that day, when checks of the bankrupts came in to the amount of more than $3,500,000, there were any payments of other notes secured by collateral; nor is there anything to show which of the two loans, the $85,000 or the $200,000, if either, the $266,600 check was applied to. Finally, there is nothing to show at what hour these loans were paid off, nor at what hour the $266,600 was deposited. Miller & Co.'s bookkeeper testifies only that it was delivered to Brown & Co. "before 3 o'clock." Whether it had actually been deposited before the loans were paid is not shown. If it were not deposited until afterwards, it certainly was not used to pay them off.

Upon the testimony the only finding we can make is that, unless the whole of the claimant's $9,600 was in the $23,000 check, some part of it was apparently included in the balance of $6,180.17 which was carried over from the 24th to the 25th. That balance, as we have seen in the Princeton Bank Case, 193 Fed. 24 (decided herewith), was swept away by the certification of the $146,600 check, and the last remnant of claimant's fund was thus dissipated.

The order is reversed, and cause remanded, with instructions to dismiss the claim.